UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JENNIFER P.,

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:22-cv-00912-TPK

OPINION AND ORDER

## OPINION AND ORDER

    This case is before the Court to consider a final decision of the Commissioner of Social Security which denied Plaintiff's application for supplemental security income. That final decision was issued by an Administrative Law Judge on July 29, 2022, following a remand from this Court. After filing the complaint in this case, Plaintiff moved for judgment on the pleadings (Doc. 6) and the Commissioner filed a similar motion (Doc. 8). For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the defendant Commissioner.

### I.  BACKGROUND

    Plaintiff protectively applied for supplemental security income on November 24, 2015, alleging that she became disabled on August 15, 2015. After initial administrative denials of her claim, Plaintiff appeared at a hearing before an Administrative Law Judge on April 30, 2018. The ALJ issued an unfavorable decision on August 31, 2018, and after the Appeals Council denied review, Plaintiff appealed to this Court. In a decision dated August 31, 2020, filed in Case No. 1:19-cv-648, the Court remanded the case for rehearing. Following the remand, Plaintiff appeared at an administrative hearing before a different ALJ on July 7, 2022. Both Plaintiff and a vocational expert, Linda Vause, testified at that hearing.

    The ALJ issued an unfavorable decision on July 29, 2022. He found, first, that Plaintiff had not engaged in substantial gainful activity since her application date. Next, the ALJ determined that Plaintiff suffered from severe impairments including intermittent seizure disorder, general anxiety disorder, post-traumatic stress disorder, major depressive disorder, bipolar disorder, substance abuse disorder, mild degenerative changes of the left humerus and left knee, mild degenerative changes of the lumbar spine, asthma, and early emphysema. He further found that none of these impairments, considered singly or in combination, met the criteria for disability under the Listing of Impairments.

Moving to the next step of the sequential evaluation process, the ALJ concluded that Plaintiff had the ability to perform a limited range of light work.  She could frequently stoop but only occasionally kneel, crouch, crawl, and climb stairs and ramps.  Things she could never do included climbing ladders, ropes, and scaffolds, balancing, working at unprotected heights or around dangerous moving mechanical parts, driving, being exposed to extreme cold or humidity, or being exposed to concentrated fumes, dusts, odors, gases, poor ventilation, and other respiratory irritants.  She could not work in bright light or be around flashing or flickering lights.  From a mental standpoint, the ALJ determined that Plaintiff could understand, remember, and carry out simple instructions and tasks, could do work that did not involve supervisory duties, independent decision-making, or strict production quotas with assembly line work, could handle minimal changes in work routine and processes, and could interact occasionally with supervisors, co-workers, and the general public.

Plaintiff had no past relevant work.  The ALJ found that with the limitations described, Plaintiff could perform light, unskilled jobs such as routing clerk, marker, and photocopy machine operator.  He also found that these jobs existed in significant numbers in the national economy.  As a result, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act.

In her motion for judgment on the pleadings, Plaintiff raises this issue:

> The ALJ's decision is not supported by substantial evidence, because the ALJ crafted the physical RFC based on his own lay interpretation of the evidence, cherry-picked the record to support his conclusions, and failed to explain how he formulated the specific limitations in the RFC.

Plaintiff's memorandum, Doc. 6-1, at 1.  There are four sub-parts to this argument as will be more fully discussed below.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 41 years old at the time of the first administrative hearing, first testified that she was living with a friend and that she had visitation rights with her 11-year-old daughter.  She did various activities with her daughter including getting their nails done and helping with homework.  Plaintiff was able to drive, although she had no car currently.  She also said she went to a methadone clinic every day and participated in counseling at the same location.

When asked about her education level, Plaintiff said she graduated from high school.  She had not worked since her alleged onset date due to dealing with mental health issues, but before that, she worked cleaning apartments.  She left that job, however, due to its physical

demands.  Plaintiff said she was having issues with her left arm and also her back.  She was taking pain medication in addition to the methadone.  Plaintiff estimated she could walk two or three blocks and could not sit for long periods of time.  She was able to shop for groceries, do dishes, sweep, and tie her shoes.  Her leisure activities including reading, coloring, and watching television as well as walking, going to the movies, and doing puzzles.  She believed she could lift 20 or 30 pounds but only occasionally.  Plaintiff said she experienced both panic attacks and seizures and that she would occasionally engage in compulsive behaviors, especially during the manic phase of her bipolar disorder.  She also had periods of depression where she did not want to get out of bed.

At the second administrative hearing, Plaintiff said, first, that she occasionally prepared meals, did laundry, and had been undergoing mental health treatment for about two years.  She had been prescribed medication for her disorders.  Plaintiff also said she had to switch positions quite often due to issues with her knees and her back.  She was able to lift a gallon of milk.  Plaintiff testified that she had been having seizures since 2009 or 2010, and that when she has a seizure, she might fall.  She further testified to having problems being in crowded places and said she did not socialize much.

The vocational expert, Ms. Vause, was asked questions about a person who was limited to light work with various postural and environmental restrictions and who could do simple tasks with some additional mental limitations.  In response, she said that such a person could work as a routing clerk, a marker, or a photocopy machine operator, and she gave numbers for those jobs as they existed in the national economy.  She also said that no more than 15% of off-task behavior would be tolerated, nor would more than one day of absenteeism per month.

### B.  Medical Evidence

The pertinent medical records show the following.  Because Plaintiff's claim of error focuses on her physical limitations and the way in which the ALJ formulated the physical residual functional capacity finding, the Court will limit its discussion of the evidence to that issue.

Treatment notes from 2016 and 2017 show that Plaintiff was being treated for chronic conditions which included diffuse joint pain, generalized muscle aches, and back pain.  Her physical examinations during this time were normal and she carried a diagnosis of history of chronic back pain.  She reported that standing in one position for too long made the pain worse and also complained of knee pain and instability.  She was taking gabapentin and ibuprofen for the pain.  Plaintiff continued to report symptoms of back pain radiating into both legs in 2018, again worsened by prolonged sitting, walking, and standing.  In 2019 she said that her back pain had gotten worse.  Objective testing showed limitation in the range of motion of the lumbar spine and she walked with an antalgic gait.

Plaintiff did have an X-ray taken of her lower back in 2022.  The study showed loss of lordosis as well as degenerative disc disease from L3-4 to L5-S1 with facet arthropathy.  That

was a worsening from a study done in 2021 which showed no degenerative disc disease. A knee X-ray taken at the same time did not show any abnormalities. In contrast to some of the other treatment notes, a note from April of 2022 showed that Plaintiff walked with a markedly antalgic gait.

### C. Opinion Evidence

Plaintiff saw Dr. Balderman for a consultative physical examination on March 3, 2016. She described her medical issues as left knee and lumbar spine pain. On examination, her gait was normal and she could walk on her heels and toes without difficulty. Other than mild tenderness of the left knee, there were no significant physical findings. Dr. Balderman diagnosed left knee pain, asthma, and a history of polysubstance abuse, and he concluded that Plaintiff had mild limitation in kneeling, climbing, carrying, and prolonged walking due to left knee pain. (Tr. 252-55).

On February 3, 2022, Plaintiff went for another physical examination, this one being conducted by Dr. Liu. She told Dr. Liu she had chronic whole body pain worsened by cold weather and exercise and that she needed to change positions often. On examination, her gait was normal and she could walk on heels and toes with moderate difficulty. There was some limitation of the range of motion of the lumbar spine and straight leg raising was positive at 45 degrees. Dr. Liu believed that Plaintiff had a mild to moderate limitation in prolonged walking, bending, kneeling, squatting, stair climbing, carrying heavy weights, and prolonged sitting and standing. She also had environmental limitations due to her asthma and she should avoid heights and heavy machinery due to her seizure disorder. (Tr. 1016-20).

### III. STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").
>
> Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112 (quotation marks omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quotation marks omitted and emphasis added). But it is still a very deferential standard of review—even more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S.

150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence standard means once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29 F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted); *see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV.  DISCUSSION

In support of her claim of error, Plaintiff first argues that the ALJ erred by not relying on any of the medical opinions of record when formulating a physical residual functional capacity finding.  Plaintiff notes that there are only two such opinions, both from consultative examiners, and that the ALJ did not give controlling weight to either.  After acknowledging that an ALJ's functional capacity finding does not have to mirror the opinion evidence in every particular, Plaintiff nevertheless contends that a lay person does not possess the expertise to interpret the evidence in the way the ALJ did, and that his decision therefore was legally unsupported.  She adds that the also ALJ disregarded evidence of a more severe impairment, specifically her antalgic gait and range of motion limitations as well as her subjective report of limitations on prolonged sitting, standing, and walking, thus engaging in impermissible "cherry-picking" of the record.  Third, she asserts that the ALJ provided no rationale for how he went about determining Plaintiff's physical residual functional capacity, and, finally, she argues that all of these errors were harmful because the record supports a more limited physical capacity including the need for a sit/stand option.

The Commissioner responds to this multi-part argument this way.  First, the Commissioner contends that the ALJ reasonably evaluated the evidence, discounting Plaintiff's subjective report of severe symptoms based on the objective medical evidence and the fact that Plaintiff's medical care was largely conservative.  The Commissioner also disputes that the ALJ "cherry-picked" the evidence, noting that he fully discussed all of the evidence favoring the Plaintiff as well as the evidence pointing to a less restrictive residual functional capacity finding.  Finally, the Commissioner argues that the ALJ reasonably relied on the opinion evidence in formulating the residual functional capacity finding because both consultative opinions supported a finding that Plaintiff had the ability to do light work.

The ALJ began his analysis of Plaintiff's residual functional capacity by summarizing Plaintiff's testimony, including her statements concerning how limited she was in sitting, walking, and standing.  He then concluded that these statements were not entirely consistent with the evidence.  The ALJ also recounted many of the complaints which Plaintiff made to her doctors over the years and then summarized the medical findings made at the numerous examinations which were conducted, acknowledging that at times she walked with a mild (or, on one occasion, a marked) antalgic gait, but also noting that at other times Plaintiff could walk on her heels and toes without difficulty and needed no help getting on and off the examining table.

He also pointed out that there were conflicting reports about whether Plaintiff demonstrated other abnormalities on examination, and he reviewed the results of the X-rays as well. To the extent that Plaintiff is arguing that the ALJ simply ignored evidence that she had limitations more restrictive than those reflected in the residual functional capacity finding, the record strongly suggests otherwise.

The next subject discussed by the ALJ was the opinion evidence. First, he reviewed Dr. Balderman's findings from 2016, and actually accepted most of the conclusions from the report, noting only that "Dr. Balderman's opinion is given partial weight because the portion of his opinion on the claimant's ability to walk is not supported by the record." (Tr. 674). Next, he considered Dr. Liu's 2022 evaluation. After observing that Dr. Liu did not define some of the terms he used and did not specify how long Plaintiff could perform certain work-related functions, he nonetheless concluded that "Dr. Liu's opinion is consistent with the lack of treatment, the essentially normal physical examinations, and the relatively benign diagnostic findings and supports a light exertional residual functional capacity with environmental limitations...." (Tr. 675). The ALJ then concluded his analysis with this statement: "Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by the medical evidence of record and the opinions of examining and treating sources." (Tr. 676).

The primary argument advanced by Plaintiff, apart from her claim of "cherry-picking," which is not supported by the record, is that the ALJ impermissibly crafted a residual functional capacity finding without any medical opinion evidence to support it. This Court has described the law in this area this way:

> An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019). As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not error. See 20 C.F.R. § 404.1545; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

*Lee C. v. Comm'r of Soc. Sec.*, 2024 WL 217582, at *3 (W.D.N.Y. Jan. 19, 2024).

First, it is important to note that the ALJ, while he did not adopt each and every conclusion reached by the two consultative examiners, accepted the vast majority of their findings. The only conclusion of Dr. Balderman's which he rejected was the limitation

which Dr. Balderman placed on Plaintiff's ability to walk, noting that such a limitation was "not supported by the lack of treatment, the essentially normal physical examinations, and the relatively benign diagnostic findings." (Tr. 674). Those are valid bases for discounting a medical opinion. *See, e.g., Mollo v. Barnhart*, 305 F.Supp.2d 252, 262 (E.D.N.Y. 2004).

As to Dr. Liu's opinion, although the ALJ did find some of his terminology vague, he nonetheless concluded that the overall opinion was consistent with the evidence and that it supported a light exertional residual functional capacity. This Court has consistently determined that even a moderate limitation in prolonged walking can be consistent with the ability to perform light work activity. *See, e.g., Harrington v. Colvin*, 2015 WL 790756, at *14 (W.D.N.Y. Feb. 25, 2015) (collecting cases where courts have "not consider[ed] an opinion assessing moderate limitations for sitting, standing and walking inconsistent with a determination that the claimant can perform the requirements of light or medium work"). Further, Dr. Liu's examination findings included a normal gait, ability to walk on heels and toes (although with moderate difficulty), the ability to get on and off the examining table and rise from a chair without difficulty, full range of motion of the hips, knees, and ankles, no joint heat, redness, or effusion, and stable and nontender joints. The ALJ was entitled to consider this evidence as well in concluding that Dr. Liu believed Plaintiff to be capable of light work activity. Dr. Liu also described certain postural and environmental limitations which the ALJ included in his residual functional capacity finding, and the Court sees no error in the way in which he accounted for those limitations.

The balance of Plaintiff's argument appears to be that the ALJ disregarded evidence, including her own testimony, of more severe limitations. However, she does not directly challenge the ALJ's finding that her self-report of symptoms was not entirely consistent with the evidence, *see* Tr. 668. Further, to the extent that Plaintiff is challenging the way in which the ALJ resolved conflicts in the evidence, it is important to bear in mind that "it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution...." *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012). For all of these reasons, the Court finds no merit to Plaintiff's claim of error, and the decision of the Commissioner will be affirmed.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 6), **GRANTS** the Commissioner's motion (Doc. 8), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security.

/s/ Terence P.  Kemp
**United States Magistrate Judge**